UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| TAMI SUE PIPER, | ) |
|       Plaintiff, | ) |
| v. | ) Case No. 10-01366 |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) |
|       Defendant. | ) |

## **O R D E R**

This matter is now before the Court on Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Affirmance. For the reasons set forth below, Plaintiff's Motion for Summary Judgment [#7] is DENIED, and Defendant's Motion for Summary Affirmance [#11] is GRANTED.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claims asserted arise pursuant to the Social Security Act, 42 U.S.C. § 405(g), et seq.

### BACKGROUND

Plaintiff, Tami Sue Piper ("Piper"), was 51 years' old at the time of her administrative hearing. (R58). At the time of the hearing, she lived with her husband in McNabb, Illinois, although her youngest daughter lived with them between 2001 and 2006. (R34). While Piper did not complete high school, she did later obtain her GED. (R37). In the past, Piper has been employed as a janitor, a nursing home caregiver, and assembly worker. (R46-47).

On April 4, 2007, Piper applied for disability insurance benefits ("DIB") as the result of a "disabling condition" that occurred on November 1, 2001. (R105). Piper had been receiving worker's compensation, but these compensation payments ended on April 1, 2007. Id. Her application was denied both initially and on reconsideration. ( R61-71). On October 25, 2007, Piper requested a hearing before an administrative law judge ("ALJ"). (R72). A hearing was held before ALJ John Woods on September 30, 2009, at which Piper, who was represented by counsel, and vocational expert ("VE") Mr. Harding, appeared and gave testimony. (R47) On December 14, 2009, ALJ Woods issued his opinion denying Piper's request. (R11-21).

After determining that the last date Piper was insured, for the purposes of Social Security, was December 1, 2006, the ALJ limited Piper's testimony to include her potential disability from 2001 until 2006. Piper testified that she experienced pain and tingling in her non-dominant upper extremity and had limited use of the area. (R38-39). Piper also testified that she was functioning better since she ceased taking Methadone and Duragesic but that her pain and swelling remained. (R38).

Piper testified about her treatment with Dr. Goodman. (R42-44). Beginning on November 8, 2001, Piper began seeing Dr. Ira Goodman, a pain specialist, complaining of left arm, shoulder, and neck pain. (R392). Piper stated that the pain began sometime in July of 2001 while she was working on an assembly line. Id. Dr. Goodman observed weakness in her left arm but also noted that her sensation was normal. (R393). On November 14, 2001, an MRI of Piper's cervical spine showed mild degenerative disc and facet joint disease. (R.422). Dr. Goodman reviewed these results and determined that Piper should start a pain medication regimen, including a heightened dose of Duragesic and epidural steroid injections. (R385, 389).

In January of 2002, Piper was no longer working, and she still experienced pain in her left arm, neck, and shoulder. (R381). Dr. Goodman increased Piper's pain medication. Id. Piper reported that her pain was improved when she saw Dr. Goodman in March of 2002, and her employer requested that she return to work. (R364, 376). In February of 2003, Dr. Goodman recommended that Piper begin taking Methadone and Dilaudid for her pain. (R355). Dr. Goodman performed the radio frequency lesioning treatments that he recommended in 2002. In August of 2003, Piper reported improvement in her pain, which continued to improve in September of 2003. (R334). Piper stated, however, that her pain returned in October of 2003, and Dr. Goodman performed a fifth nerve block. (R304). Piper continued to report an oscillating degree of pain until July of 2004. (R504).

In September of 2004, Piper received an independent medical examination from Dr. Andrew Zelby, who found that Piper required no restrictions and could return to work. (R715). Dr. Zelby also opined that Piper should begin easing from her drug regimen and no longer required further treatment for her conditions. Id. Zelby also saw Piper again and continued to express the opinion that Piper could return to work and was addicted to pain medication. (R709). Piper returned to Dr. Goodman and reported that Methodone was less effective and that she was taking an increased amount of Dilaudid. (R499). Dr. Goodman continued to treat Piper through May of 2007. (R460).

Piper is able to take care of her personal needs by herself. (R40-41). She did not drive for six years after her work-place injury. (R35-37). Piper stated that she spent most of her time between her alleged onset date and her date last insured "melted into a chair." (R43). Piper also stated, however, that she was able to take a vacation to Cancun, Mexico, where she "did not hurt at

3

all." (R44). During one doctor's visit in 2003, Piper also stated that she had driven over 100 miles for a medical appointment. (R17).

At the second hearing, the ALJ presented the VE with the following hypothetical:

> For the first hypothetical, assume past work the same as the claimant's. Exertional capacity limited to light work. No climbing of ladders, ropes, or scaffolds. Other postural functions could be performed occasionally. No overhead reaching with the non-dominant upper extremity. For this hypothetical, all the manipulative functions could be performed frequently. Would also need to avoid environmental hazards such as unprotected heights and dangerous machinery. How would the past work be affected by that hypothetical. (R48-49).

VE Harding testified that this hypothetical individual could potentially perform past relevant work of housekeeping, order, clerk, and assembler production, but would be unable to work as a nurse aide. (R49). The ALJ then presented a second hypothetical that included everything in the first hypothetical but stating that "all those things could only be done occasionally with regard to the non-dominant upper extremity." (R49). The VE opined that the hypothetical individual could still perform past relevant work of order clerk but would not be able to work as a production assembler or a housekeeper. Id.

In a third hypothetical, the ALJ included everything in the first and second hypotheticals but also assumed that the hypothetical individual would need to "alternate sitting and standing during the course of the day so that by the end of the day, they're sitting half the time and standing half the time." (R50). The VE responded that, depending on the job duties, the hypothetical individual may still be able to perform the work of an order clerk. (R50-54). The VE also testified that Piper did not possess any transferable skills at the sedentary level but that Piper did have transferrable unskilled work skills. (R54-56).

4

On December 14, 2009, the ALJ issued his decision. (R11). The ALJ found that Piper did suffer from the following severe impairments: (1) degenerative disc disease of the cervical spine, and (2) chronic pain syndrome of the upper left extremity. (R16). The ALJ determined, however, that Piper does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (R18).

The ALJ next determined that Piper would be able to perform past relevant work as an order clerk, which did not require extensive use of the non-dominant upper extremity and would not require lifting more than 20 pounds. (R19). In making this determination, the ALJ found that Piper had the residual functional capacity for light work so long as she not work on ladders, ropes or scaffolding, only occasionally perform postural activities, and seldom use her non-dominant upper extremity. (R18). Based on a demonstrated exertional capacity for light unskilled work, Piper's age, education, and work experience, the ALJ concluded that Piper was not under a disability as defined in the Social Security Act (the "Act"). (R20-21).

Piper submitted a Request for Review of Hearing Decision with the Appeals Council, and on September 9, 2010, the Appeals Council affirmed the decision of the ALJ. (R1-3). This appeal followed. The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

In order to be entitled to DIB, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966 (1986).

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed; (2) is the plaintiff's impairment "severe" (20 C.F.R. §§ 404.1521, 416.921); (3) does the impairment meet or exceed one of the list of specified impairments (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former occupation; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. Garfield v. Schweiker, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. Tom v. Heckler, 779 F.2d 1250 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. Pugh v. Bowen, 870 F.2d 1271 (7th Cir. 1989).

The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504 (1985); Imani v. Heckler, 797 F.2d 508 (7th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580 (1986).

In her appeal, Piper's pleadings raise essentially one claim: the ALJ failed to give Dr. Ira Goodman's medical opinion sufficient weight. The Court disagrees and finds that the ALJ did sufficiently consider Dr. Goodman's medical opinion and findings. Furthermore, it is the decision of this Court that the ALJ's decision to afford Dr. Goodman's opinion less weight was supported by the substantial weight of the other medical evidence.

The ALJ considered Dr. Goodman's medical opinions and treatment as he was the primary treating physician during the time period in question. The ALJ also considered the medical opinions of Dr. Zelby during that timeframe. The ALJ noted that these doctors were outliers from the remainder of the medical opinions provided on Piper's conditions. On one hand, Dr. Goodman opined that Piper would be required to alternate between sitting and standing and that her left arm was non-functional. On the other hand, Dr. Zelby essentially stated that Piper did not suffer from any medical condition and, instead, was developing a reliance on pain medication.

Where the ALJ does not give controlling weight to the treating physician's medical opinion, the ALJ may consider other factors such as consistency in medical findings in reaching its opinion.

7

See Smith v. Apfel, 231 F.3d 433 (7th Cir. 2000). Given the irreconcilable medical testimony from this time period, the ALJ considered medical evidence from one year following Piper's date of insured.

In 2007 and 2008, Piper was treated by Dr. Ralph Gay at the Mayo Clinic and Dr. Ronald Kloc at the Illinois Valley Community Hospital. Piper reported marked improvement in her pain after she received treatment from Dr. Kloc. (R572, 598). Piper attended 13 physical therapy sessions in 2008 but was discharged after failing to make further appointments and missing an already scheduled appointment. (R638). Piper was also examined by two state agency reviewing physicians, Dr. Francis Vincent and Dr. Delano Zimmerman, who agreed that Piper could perform light work with various limitations. (R543, 59). Given these consistent medical opinions, the ALJ gave the testimony of these physicians greater weight, and this Court agrees that the ALJ's findings are supported by the substantial weight of the medical evidence.

The record indicates that, in considering Piper's RFC, the ALJ gave full consideration to the medical evidence of record and fully considered her subjective complaints of pain and discomfort, and credited them as far as they were consistent with objective evidence in the record. It is well-settled that "[a]n ALJ may discount subjective complaints of pain that are inconsistent with the evidence as a whole." Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995). Such credibility determinations may not be overturned by this Court unless they are patently wrong. Herr v. Sullivan, 912 F.2d 178, 182 (7th Cir. 1990).

Piper has the burden of demonstrating that she is disabled and providing medical evidence in support of her claim. Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004). Here, the record contains no medical evidence that is wholly inconsistent with the ALJ's findings. This is not a case

where medical records were insufficient or incomplete, which could necessitate further development of the record. Rather, the medical records simply failed to compel the conclusion that Piper is disabled within the meaning of the Act. Accordingly, the Court must conclude that the ALJ's determination was supported by substantial evidence.

## CONCLUSION

For the reasons set forth herein, the Commissioner's Motion to Affirm [#14] is GRANTED. This matter is now TERMINATED.

ENTERED this  5th  day of August, 2011.

                                                    s/ Michael M. Mihm
                                                    Michael M. Mihm
                                                    United States District Judge